. Good morning may it please the court Jeffrey Connor on behalf of the account. This court and the Supreme Court of the United States. The Supreme Court of the United States decision from Godinez versus Moran noting that competence has a modest aim. It seeks to ensure that a defendant has the capacity to understand the proceedings and to assist counsel. In Godinez the Supreme    has the ability to understand trial. And that standard is whether or not focuses on on the defendant's presence ability to consult with his lawyer with a reasonable degree of rational understanding. And a rational as well as factual understanding of the preceding the proceedings against them. Counsel in this case was there ever a professional opinion. That Davis was incompetent. There was not. And so that actually goes directly to the point that I want to focus on with the court this morning. I think we could have what I would think is probably a more academic exercise about the application of and the limitations on evidentiary review that admissibility of new evidence that wasn't developed in state court in federal habeas proceedings. But the thing I think that troubles me the most about this case is that the only report that we have from Dr. Jones Forrester begins by acknowledging that that report was not intended to address the matter of competency. And then in that introduction went on to note that that Mr. Davis meets the standard for competency under dusky. And so I'm very troubled by the ruling in this case when there has never been any professional that has deemed him to be incompetent. Now, what I think the district Dr. Jones Forrester's evaluation provides some evidence, if not strong evidence of incompetency. I mean, Mr. Davis's borderline intellectual disability, his IQs in the 80s that remained true until 2017. And doesn't that make it at least somewhat probable that he also had a disability in 2004? So having a disability doesn't make you incompetent. I think that's the importance of what the Supreme Court was saying in Godinez versus Moran is that there is not a heightened standard of competency to plead guilty. And so it's just the bare minimum standard of competency to stand trial. And defendants can have all sorts of cognitive or psychiatric issues that may, you know, play a role in their communications with counsel, but it doesn't render them incompetent. And so the threshold for competency is very low. And I think that's the struggle here is that the district court here, I think, tries to draw a through line between the Sagmore records from Mr. Davis' childhood in the early 1980s to 2017 and the trial, or not trial here, but the entry of the guilty plea was in 2003-2004 time frame to try to draw a through line to show that he was incompetent at the time that he entered his plea. But I think there's two things. One, you've got the Jones Forrester report, Dr. Jones' Forrester report that suggests that he is competent, that he does meet the minimum standard for competence under DUSCIE. The other thing is that if you look at the state court record, particularly at page 557, so that's in volume three of the excerpts of record, that's the point where the state district court judge was addressing the Sagmore records, and the trial judge or the district court judge there noted that there was nothing in those records that would have even come close to demonstrating the sort of intellectual deficiency in cognitive functioning that would come close to, I think there she was really looking at and using it as an insanity to support an insanity defense. But I think that's still sort of the same. I mean, I don't want to confuse the insanity defense and competency to stand trial. But still, she's recognizing there that there was nothing in those records that demonstrated anything close to him that counsel could have used to present an insanity defense. And I think that's informative here as well, particularly when looking, comparing this case to Deere versus Cullen, where, you know, the court there acknowledged that there had been no showing of any sort of, like, psychosis or delusions or anything like that. And I think the record is the same here. At volume four, excerpts of record 636, this is from the Sagmore records from New York, no evidence of delusions or hallucinations. Four excerpts of record 637, no signs of psychotic process. Four ER 642, no signs of delusions or hallucinations. So there's no sign of any psychiatric condition that would have interfered with his ability to communicate with counsel. Now, of course, we do have a situation here where his IQ is a by itself would not even be enough to establish intellectual disability under the standards for defining intellectual disability. An IQ score is the first component of that process. But the IQ score alone isn't enough to establish intellectual disability. And then the district court here in a footnote also recognized that a finding of intellectual disability by itself would not be enough to establish incompetence. And so I think there's just a lack of evidence in the record to support the district court's determination here that at the time of the entry of the guilty plea that it was both objectively unreasonable for the state courts to determine that he was competent. State court competency determinations are entitled to a presumption of correctness. But even more so, if you look at the district court's de novo analysis that considers the Dr. Jones Forrester's report that's from outside the state court record and couldn't be considered in the EDPA analysis, it doesn't support the conclusion that he's incompetent. Can I ask you a procedural question about the second claim, the ineffective assistance claim? You've argued that that's not properly before us because he didn't seek a certificate of appealability. But why did he need a COA on that claim? He's not trying to appeal anything. He's just presenting it as an alternative ground for firmness. Excuse me? So I thought about that myself, Your Honor, when I first was introduced to this case and read the briefs. I looked at that argument and I was like, well, I'm not quite sure about that. But I think the answer to that is twofold. Looking at both the judgment and the district court's order, there are some particular things about the relief that the district court ordered in this case that is different than what the relief that he would get under ground two. And so it is not really just asking for a firmness of the judgment. The relief that he would get would potentially be different. And so that supports the actual reasoning of why he would have needed to file a cross appeal and obtain a certificate of appealability with respect to ground two. So if you look at the judgment at excerpts of record two, it says it is further ordered that the petition for writ of habeas corpus as amended is granted as to ground one. It is further ordered that to the extent required, Davis is denied a certificate of appealability with respect to ground two. So that's in the judgment. And so if he just wants affirmance of the judgment, ground two doesn't affirm what is in the judgment. But also, I think, you know, that may seem a little formalistic. But if you look at the district court's order at page 24 of the excerpts of record, the relief that was granted, it says within 120 days of the latter of the conclusion, excuse me, within 120 days of the latter of one, the conclusion of any proceeding seeking appellate or certiorari review of this court's judgment if affirmed or two, the expiration for seeking such appellate review, Davis shall be released from all custody and or other restraints including parole or other supervision unless subject to the competency issues addressed within this order, the state files a written election in this matter of its intention to try Davis and thereafter commences jury selection. I think if he succeeds on ground two on the ineffective assistance of counsel claim, that subject to competency issues addressed within this order goes away. I think the intent behind that language is that if this is remanded to state court and Mr. Davis was determined to be incompetent to stand trial, the state, the writ would not, this conditional writ would not require his release. I don't think that's the case for the ineffective assistance of counsel claim that's raised in ground two. So I do think the relief that's awarded under ground one is different. And so for them to get to ground two, they did need to file a cross appeal. Unless the court has any further questions, I'll reserve the rest of my time. All right. Thank you, counsel. Thank you. Good morning, counsel. Good morning, your honors. Please the court. My name is Amelia Bizzaro and I represent the appellee James Davis. Since he was a child, James has suffered from borderline intellectual disability, cognitive deficits and mental illness. This child has suffered from     His case is about whether his plea was constitutionally sound. What do you say to the argument that your friend made on the other side that those things are not benchmarks for determining competency? Whether a plea is constitutional is two parts. Competency is a threshold determination. But even if James is competent as the warden has argued, then the next question is whether or not he entered a knowing voluntarily intelligent plea or whether it was the result of ineffective assistance of counsel. The lower court stopped its inquiry at competence because it stopped at that threshold question. The court determined he likely wasn't competent at the time he entered the plea. But for the government to say that he was competent but then not address the actual constitutional claim is a  Let's stick with this competency issue for a moment. I think the counsel pointed to specific places in the record that talk about that Mr. Davis did not suffer from psychosis or delusions. So even if we can see from his prior records at the institution that he had a low IQ and may have had some developmental disabilities, how still does that rise to the level of incompetency determination, as the district court found? The lower court had an evidentiary hearing. And that order I think is relevant here. It made several findings of fact regarding James' ability to process information and his mental illness. And what the court found was that confluence of things, his intellectual disability, his mental illness and his cognitive defects, specifically which relate to his ability to make decisions, in this case with a reasonable degree of rational understanding, deficits are pronounced when a stress rushed or distracted. All of these things play a factor into whether or not he was able to enter a constitutional court. On the other hand, there were facts to establish that he was able to enter into the plea. And so, I mean, sitting where we are, how is this not simply a mixed question where a reasonable person could reach either conclusion, which then requires us to defer to the state court finding? I don't think this court ever defers to the state court finding, in our opinion. It is a mixed question of law and fact for this court because it is evaluating the grant of a habeas relief. But the lower court's decision wasn't entitled to deference at the outset. And the district court found that to be the case. It concluded that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts. And that allowed it to consider all of the evidence. But how is an unreasonable determination of the facts if a reasonable person can reach either result? I mean, isn't that the test? If, in fact, two people could have differing opinions about this, that's precisely the kind of question that would not constitute an unreasonable determination of facts. I respectfully disagree, Your Honor. What the lower court said was that there was nothing in the Sagamore records that would have changed the outcome. And what the district court said was it looked at the contents of those records, which isn't reflected in the Nevada Supreme Court decision. It just simply said nothing in here would have mattered. But it would have mattered because those records detail his limited ability to process information conceptually, his troubles with auditory modality. And so I think that there is no deference here. The court evaluates it de novo. And this court can affirm for any reason it wishes. It can affirm as the concluding, as the lower court did, that he was incompetent. But if this court doesn't find that he's incompetent, if it decides that differently, then it still must look to whether or not the plea was knowing voluntarily and telling. Must we look to that if the district court didn't? I believe so, Your Honor. I think the court's case says that we have to address an issue that was not addressed by the district court. Well, this court is evaluating the grant of habeas relief de novo. But could you give me a case that says we must address an issue that the district court did not address? Not off the top of my head, Your Honor, but Godinez addresses this issue directly. It talks about a plea being both competency and knowing voluntarily, intelligently made that for a plea to be valid, both parts must exist. So if this court declines to affirm on the grounds of competency, that still leaves open. The claim is still before this court. But that doesn't mean that we must address it. We could elect to address it on de novo review. But I was asking you to support your statement that we must address the issue. I defer to Your Honor. I think that it could, in that situation, then remand for the district court to consider the constitutionality of the claim. I also dispute the warden's position that the ineffective assistance of counsel claim is not before this court. As Your Honor asked, there is a U.S. Supreme Court case directly on point. That's Jennings v. Stevens. This was an argument made for the first time in the reply brief. But that case squarely says that a petitioner can argue. In that case, the petitioner won on two claims and lost on the third. It presented all three claims to the Supreme Court or, I'm sorry, to the Fifth Circuit. They reversed on two and said they didn't have jurisdiction on the third. The U.S. Supreme Court said they did. The appellee who doesn't cross appeal can urge affirmance on any ground but cannot seek greater relief. We're not seeking greater relief. But the point that counsel made is that the order that you got orders a retrial subject to competency. Which seems to contemplate that if the court, they go back and the court says, no, okay, we'll look at it. Now he is competent. Then they're done. Which is different and narrower relief from what you would get if you prevailed on the IAC claim, isn't it? I think pragmatically what would happen is that the case would go back to the state court for proceedings and the state court could elect to revisit competency and have a competency hearing that we've never, that has never happened in this case yet before and then determine competency. If he is incompetent, then he's like every other similarly situated defendant who can't go forward. So I don't think the relief is anything different here. But if he's competent, then under the order that you have from the district court right now, then they're done, right? I'm sorry. Then he's. If on, if under, if we were to just affirm the order that the district court entered, it seems to contemplate that if the state finds him to be competent or finds that he was competent, I guess, then the conviction can stand. Is that how you read it? That's not how I read it, Your Honor. If he, if he, you affirm and he goes back to state court proceedings and the state court finds him competent, then he has available to him the options he had before him to enter a plea. He gets the new trial. He gets the new proceedings. Affirmance here would vacate the  It puts him back in the position he was in before he entered the  So I think all of those things are available to him. It wouldn't sort of cut the state's legs out from under them and prevent them from retrying him if he were found competent. Okay. The plea colloquy in this case was unique based on what had happened the day before. James entered his plea on the day of the, it was scheduled for trial, which was March 2nd, 2004. And the day before he and his attorney, Howard Brooks, got into such a loud shouting match in the courtroom that the court staff didn't allow her to enter the room that day until everyone calmed down. By this time, the two had had an extremely antagonistic and distrustful relationship. Trial counsel testified that their relationship began deteriorating the first week of  And Mr. Brooks wasn't able to do a lot of work on the case in February because that month he also tried a capital case in state court. But trial counsel also said that when he discussed the case with him and thought he was able to do that competently, an appellate counsel said the same thing. So this is really just going back to the point of Judge Desai's question. I mean, there's definitely evidence that supports your view, but there seems to be some evidence that would support a contrary view. And, you know, if reasonable people could, if there's evidence supporting both sides, how can we say that the state court's determination was unreasonable? State court's determination was unreasonable on three ways. First, the unreasonable determination of the facts. But ignoring that, there's two other things. Second, it didn't address the claim before it, whether the plea was knowing voluntarily, intelligently entered based on these confluence events. It looked at a much narrower question of whether or not James had signed the plea agreement. Also, on the ineffective assistance of counsel claim, my guess is that the state court did not use the wrong test there. It was outcome determinative, and whether the outcome would have been different as opposed to reasonable probability of a different role. So under those three theories, there is no deference to the Nevada Supreme Court decision. In my... Was your claim to the ineffective assistance of counsel claim? Yes, Your Honor. That was not certified. No, that's correct, Your Honor. And so in order for us to reach that issue, we would have to expand the certificate of appealability, correct? No, Your Honor, because it is available to the court under Jennings v. Stevens. And this is, again, something that was raised for the first time in the reply brief that didn't respond to if the court would like me... But the certificate of appealability issue is one that we impose and that the law imposes. So whether or not they raised it, the issue is whether or not that issue is properly before us if the certificate of appealability has not been expanded and we did not elect to do that or the court did not elect to do that. So I'm not sure that that issue is before us a resolution. The relief that the court granted below was the grant of the writ. And so... On claim one, not on claim two. That's correct, Your Honor. But, again, in Jennings v. Stevens, it is on all fours. In that case, there was a grant on two claims and not on one. All three claims were before the circuit. And... How were they before the  Was there a certificate of appealability on all three of them? There was not, Your Honor. How were they before the circuit if the COA hadn't been expanded? Because the petitioner simply argued, as this court is available to do, that it can affirm on any ground that it wishes. And so that third claim was an additional ground. It can't affirm on any ground that we wish. It has to be supported by the law. Of course, Your Honor. And the... What the Fifth Circuit did was, as Your Honor is suggesting, is it said that we can't address that claim. We can only address the two upon which there was the appeal. And the United States Supreme Court reversed. And it said... And the site is 574 U.S. 271. But it said you can't seek greater relief. And because we are not seeking greater relief, we are seeking affirmance of the writ grant. This court can consider the ineffective assistance of trial counsel claim. And that claim argues that Mr. Brooks was ineffective for not seeking these Sagamore records when he first learned about them. He knew between the time of the arraignment and the preliminary hearing that James had been in custody in a mental institution because he had spoken to Mr. Davis' father. At that time... Is the Jennings case in your brief? It's not, Your Honor, because this was an argument made for the first time in the reply brief. But I am happy to submit a 29-G letter if the court would... No, thank you. Not for me. I can file the case. Okay. With that, we're asking the court to affirm here. This plea was conducted under extremely unique and volatile circumstances. And this court looks at the totality of those circumstances from what happened the day before into what happened in the courtroom today. It also considers Mr. Brooks' performance, whether he should have gotten those records. If he had gotten those records, as our brief argues, it would have informed every decision that came later, including James' ability to enter a knowing, intelligent, involuntary plea. And with that, I ask this court to affirm. What is the issue that you say is argued for the first time in the reply brief? In the reply brief, they say, Your Honor's original question was that the claim to is not before this court, that by not cross-appealing, we waived it. Well, I don't think... Maybe not by not cross-appealing but not having it certified, in my view, doesn't make it before the court. If it's not in the COA... Then that has never been briefed, Your Honor. The argument that they make in the reply brief is that we had to cross-appeal for it to be before. I understand their argument, but from the court's perspective, generally, if the certificate of appealability is not expanded, the argument is not... It's not addressed by the other party, and it's not properly before us. It's my opinion that it is addressed by the other party. In their opening brief, they do talk about Mr. Brooks' effectiveness, and I also fully brief it. In my brief, there is a reply brief, so I think the matter is all the information that the court would need would be before it if it does, in fact, need to expand the COA to consider it, although it's our position that it does not need to do that. Thank you. Thank you. Just a few quick points, Your  First, I'll start with the Jennings v. Stevens issue, and I want to be very clear that I do agree with my friend on the other side's reading of Jennings v. Stevens. That case does say that if it isn't appropriate to raise something as purely as an affirmance of the judgment, you can raise another claim without having to satisfy the certificate of appealability requirement. But how does that affect us in this case? So I think that it's important, and I think to get to what Judge Miller was asking about is that the order that grants the writ is a conditional writ that gives the state a certain amount of time to comply with the conditions in the writ, and I think there's some specific language in here that says subject to the competency issues addressed within this order, and I think the idea there is that if this case returns to state court and it's determined that Mr. Davis is incompetent to stand trial, that the state wouldn't have to satisfy the conditions to retry him within that certain period of time and continue to hold him in custody. Okay, so what's your answer to the question as to whether or not Jennings mandates that we address the ineffective assistance of counsel claim? Yes or no? Does it mandate that we address it or no? No. And why not? It doesn't mandate it in the sense that the court has discretion to consider an alternative ground for affirming the judgment if it thinks there's some other reason that's, as Your Honor pointed out, is supported by the law and the record. It's not to say that the case said that you don't need a certificate of appealability. That is correct. It's not to do that. So under the facts of this case where we don't have a certificate of appealability, does Jennings nevertheless say we as a court must address that issue in your view? No. I think what I'm trying to say here, what Jennings does establish is that if there are three, what happened at Jennings was the petitioner raised three ineffective assistance of counsel claims that challenged counsel's performance during the penalty phase of a capital trial. The petitioner prevailed on two of the three claims in the district court and the state appealed. On appeal, the petitioner raised all three claims and the Fifth Circuit said we're reversing on the two claims that were granted and we can't consider the other one because you didn't cross appeal, you didn't get a certificate of appealability. Those are all ineffective assistance of counsel claims. Here we have two different claims, a competency claim and an ineffective assistance of counsel claim. So I'm not sure that same rationale applies when you have two discrete claims as opposed to one claim and three arguments in support of that claim. Correct. With the exception that it really does depend upon how the judgment and the relief that is granted is worded because if you could raise a separate claim and if it results in the same relief, that's just affirming the judgment. But that's not what would happen here based upon the way the district court wrote its order. I'd also just like to quickly address the parts about ground one and getting to the knowing intelligent voluntary piece of that claim. All right. Godinez is very specific in the sense that there's not a different competency standard for determining the voluntariness of a plea. So Godinez rejects the idea that you put extra gloss on whether or not a plea is knowing intelligent and voluntary under Boykin and Brady for determining whether or not under the totality of the circumstances the record establishes that there was a knowing intelligent voluntary plea. Guilty pleas that are accepted are presumed to be valid and they have to show under the totality of circumstances that it wasn't. But you don't put extra gloss on that analysis that looks at the particular mental capacity of the defendant. That question is resolved through the competency inquiry under Godinez. That's part of the inquiry, but once that box is checked, then you go on to look at is this voluntary? You know, well, there was no coercion. Was the defendant adequately advised of the rights he was waiving? Was he adequately advised of the consequences of the plea? All those things. So I see I'm out of time. You just asked it in court reverse. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Patterson v. Attorney General. Thank you.
judges: RAWLINSON, MILLER, DESAI